# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| ERIC BARTL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-1071 |
| | ) |
| COOK COUNTY CLERK OF THE | ) |
| CIRUIT COURT, ILLINOIS, | ) |
| SECRETARY OF STATE, and | ) |
| GOVERNOR of the STATE OF | ) |
| ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

## O R D E R  &  O P I N I O N

This matter is before the Court on Plaintiff Eric Bartl's Motion to Proceed In Forma Pauperis (Doc. 3), Plaintiff's Motion to Request Counsel (Doc. 4), and Magistrate Judge Schanzle-Haskins' Report & Recommendation ("R&R") recommending that Plaintiff's Motion to Proceed In Forma Pauperis be denied and that the action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). (Doc. 5).

Plaintiff was notified that failure to object to Judge Schanzle-Haskins's R&R within fourteen days after service would constitute a waiver of any objections. (Doc. 5 at 4). After requesting and receiving an extension to file any objections, Plaintiff filed objections to the R&R on March 23, 2015. (Doc. 9). For the reasons stated below, the Court adopts the disposition recommended by Judge Schanzle-Haskins's R&R, and modifies it as explained herein. Plaintiff's Complaint is dismissed, but

the Court will provide Plaintiff with leave to file an amended Complaint within twenty-one days.

**LEGAL STANDARDS**

When a plaintiff files an Objection to an R&R, the Court reviews *de novo* those portions of it to which a specific written objection has been made. Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

Pursuant to 28 U.S.C. § 1915(a)(1), "any court of the United States may authorize the commencement . . . of any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets . . ." The same section instructs that courts "shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." *Id.* § 1915(e)(2)(B)(ii).

Dismissals pursuant to § 1915(e)(2)(B)(ii) are treated in the same manner as dismissals under Federal Rule of Civil Procedure 12(b)(6). *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Therefore, the court must take "all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Id.* A plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires

enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Pro se complaints are to be liberally construed and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)(per curiam).

**FACTUAL BACKGROUND**

This case emerges in the aftermath of an unsuccessful lawsuit that Plaintiff filed against the Chicago Carriage Cab Company for false imprisonment, assault, malicious prosecution, and gross negligence in the Circuit Court of Cook County's Law Division. (Doc. 1 at ¶ 13). Plaintiff alleges that the state court system engaged in a conspiracy designed to deny him access to justice, and in part attributes this conspiracy to certain judges' hostility toward him because of his Christian faith. (*Id.* at ¶ 14).

Plaintiff alleges that the Illinois state court, and the various judges who heard his case, failed to sanction the defendant's fraudulent behavior (*id.* at ¶¶19-23), allowed him too little time to respond to a motion for summary judgment and prepare for trial (*id.* at ¶¶ 25, 27), discriminated against him by granting the defendant either summary judgment or directed verdicts on certain claims (*id.* at ¶ 26), refused to admit his exhibits or allow him to present exhibits to the jury during deliberation (*id.* at ¶ 28), gave improper jury instructions (*id.* at ¶¶ 29-31), and improperly limited the allowed length of his post-trial motion (*id.* at 33).

He alleges that the employees in the office of the Circuit Court Clerk also discriminated against him. For example, he alleges that employees failed to timely

file amended complaints (*id.* at ¶¶ 35, 57) and improperly dated one of his amended complaints (*id.* at ¶ 35), reluctantly granted him access to publicly available files to which he had previously had unfettered access (*id.* at ¶ 36), withheld available files by pretending that they were not available (*id.* at ¶¶ 38-44), failed to complete orders that he had placed (*id.* at ¶ 47), lied to him about the availability of certain files that were off site (*id.* at ¶¶ 48-52, 54-56), lied to him about the status of the arbitration panel's pre-trial ruling in his favor (*id.* at ¶ 58), and refused to process a change of address form. (*Id.* at ¶¶ 59-62).

Plaintiff further alleges that the Illinois Secretary of State discriminated against him. Plaintiff's tort case related to actions taken against him by a cab driver named Adewonuola Lala. (*Id.* at ¶ 64). He alleges that an individual who appeared in court and claimed to be Adewonoula Lala was not that cab driver. (*Id.* at ¶ 68). In an effort to prove that the gentleman claiming to be Adewonoula Lala was a different person than his cab driver, Plaintiff issued a subpoena to the Secretary of State requesting a color copy of the photograph on Adewonoula Lala's drivers' license. (*Id.* at 71). The Secretary of State refused to comply with the subpoena without a judge's order, but responded after the judge issued the subpoena on June 27, 2013. (*Id.* at ¶ 75). Plaintiff alleges that the photograph that the Secretary of State produced "was not a copy of the original driver's license but simply a picture printed out of a computer which the Secretary of State's office claimed to be from the original driver's license of Lala. But it had a different face than the copy of the original driver's license. It had the face of the imposter." (*Id.* at ¶ 76).

Ultimately, a jury found against him on the claims that survived summary judgment and directed verdict. After the verdict, Plaintiff alleges that the Illinois Appellate Court Clerk attempted to hinder him from filing an appeal. For example, employees would not allow him to file an appeal unless he had direct change, and also refused to provide him with an appeal number and information about the appellate judge to whom the case was assigned. (*Id.* at ¶¶ 88, 90). He alleges that the employees provided him with shifting explanations for why they could not give him the information that he requested. (*See id.* at ¶¶ 93-94). Plaintiff settled his case for "a nominal settlement offer" rather than pursuing an appeal. (*Id.* at ¶ 98).

In this lawsuit, Plaintiff has sued the Clerk of the Circuit Court of Cook County in her official capacity, the Secretary of State in his official capacity, and the Governor of the State of Illinois, in his official capacity. (*Id.* at ¶¶ 9-11). He has alleged that all of the judges that conspired against him are employees or agents of the State of Illinois. (*Id.* at ¶ 18). Plaintiff has brought fourteen counts against these defendants. Counts one through four are brought against all defendants pursuant to 42 U.S.C. § 1983 and allege that defendants violated his First Amendment rights, denied him due process, and denied him of his right to trial by jury. He alleges that Defendant violated his rights under the Equal Protection Clause pursuant to 42 U.S.C. §§ 1981 and 1983 (Count V), engaged in a conspiracy to obstruct justice pursuant to 42 U.S.C. §§ 1983 and 1985 (Count VI), engaged in a conspiracy to deprive Plaintiff of his right to equal protection under law (Count VII), and failed to take steps to prevent the violations of his constitutional and statutory rights in violation of 42 U.S.C. §§ 1983 and 1986. (Count VIII). Plaintiff has also

alleged a number of violations of Illinois law. These include violations of the Illinois State Constitution (Count IX), the Illinois Religious Freedom Restoration Act (Count X), Tampering with Public Records (Count XI), tampering with public records (Count XI), and state law conspiracy (Count XII), respondeat superior (Count XIII), and indemnitifaction (Count XIV).

**REPORT AND RECOMMENDATION**

Judge Schanzle-Haskins's R&R recommended that this Court dismiss Plaintiff's lawsuit because (1) it fails to state any claims under § 1983 because none of the defendants are "persons" for purposes of § 1983; (2) it fails to state a claim under § 1981, because § 1981 does not protect individuals from discrimination based on religion; and (3) all remaining federal claims are barred by the doctrine of sovereign immunity.

In his objection, Plaintiff concedes that he cannot state a claim under § 1981 so long as it is limited to racial discrimination. (Doc. 9 at 3). As the Seventh Circuit has recently recognized, "section 1981 has been interpreted to provide a remedy to members of any racial or ethnic group," but does not protect individuals from religious discrimination. *See Lubavitch-Chabad of Ill. v. Northwestern Univ.*, 772 F.3d 443, 446 (7th Cir. 2015). Therefore, Plaintiff's objection with respect to his § 1981 claim is without merit.

Next, Plaintiff challenges the conclusion that he has not stated a claim under § 1983. He cites the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for the principle that local governmental entities are considered persons for the purpose of section 1983. However, the case law in this

6

area is clear that state governmental agencies and local governmental agencies are treated differently for purposes of section 1983. A State "is not a 'person' within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). Nor are state officials sued in their official capacity because such a suit against them would be "no different from a suit against the State itself." *Id.* at 71. Defendant has not challenged the Magistrate Judge's correct conclusion that all named defendants are state officials sued in their official capacity. Nor could he. Illinois case law is clear that the clerks of circuit courts in Illinois are state officials and not local officials. *See* Ill. Const. 1970, Art. VI, § 18(b); *Drury v. Mclean Cnty.*, 433 N.E.2d 666, 669 (Ill. 1982) ("We conclude that the clerk of the circuit court is a nonjudicial member of the judicial branch of State government and not a county officer."); *see also Rechanik v. Garman*, 14 C 1453, 2014 WL 2978552, at *4 (N.D. Ill. July 2, 2014). And the Governor and Secretary of State of Illinois and Illinois judges are officers established by the Illinois constitution. *See* Ill Const. 1970, Art. V, § 1; Ill. Const. 1970, Art. VI, § 1. Therefore, the Court agrees with the Magistrate Judge that the Defendants are not persons.

Magistrate Judge Schanzle-Haskins also concluded that Plaintiff's claims brought pursuant to 42 U.S.C. §§ 1985 and 1986 were barred by the doctrine of sovereign immunity. Plaintiff spends much of his objection providing a number of off-the-mark reasons for why sovereign immunity should not apply in this situation. These include arguments that the State of Illinois has waived sovereign immunity,[1]

---

[1] It has not. The Illinois Constitution has abolished sovereign immunity, "[e]xcept as the General Assembly may provide by law . . . ." Ill. Const. 1970 art. XIII, § 4. The Illinois legislature reinstated sovereign immunity when it passed the State

7

that defendants have waived their immunity by acting in bad faith,[2] that the Fourteenth Amendment abrogated sovereign immunity,[3] and finally that the Supreme Court's sovereign immunity jurisdiction is unconstitutional. Although this Court agrees with Magistrate Judge Schanzle-Haskins that sovereign immunity would bar claims brought against the state, it need not go that far. This is because state agencies and states are not "persons" under §§ 1985 and 1986 for the same reason that they are not "persons" under § 1983. *See Ross v. Illinois*, 48 F. App'x 200, 202 (7th Cir. 2002)("The State of Illinois is not a 'person' under sections 1983 and 1985 and is thus not subject to suit."); *Collier v. Ill. Dep't of Human Rights*, 221 F.3d 1338 (7th Cir. 2000) ("[Section] 1985 cannot support [plaintiff's] suit because the State of Illinois is not a 'person' subject to suit under the law."); *Anderson v. U.S. Dep't of Agriculture*, No. 14-2339, 2015 WL 1136174, at *3 (7th Cir. Mar. 16,

---

Lawsuit Immunity Act, which provides for exceptions that do not apply here but otherwise states that "the State of Illinois shall not be made a defendant or party in any court." *See* 745 Ill. Comp. Stat. 5/1 (2010).

[2] They have not. Plaintiff misunderstands the Supreme Court's holding in *Hutto v. Finney*, 437 U.S. 678 (1978). In *Hutto*, the Court reasoned that a district court's award of attorney's fees against a state for bad faith "served the same purpose as a remedial fine imposed for civil contempt," and was indistinguishable from "any other penalty imposed to enforce a prospective injunction." *Id.* at 691-92. This fine was ancillary to the prospective injunctive relief and was necessary to the realization of that relief. *See id.* It was therefore not the same as money damages, which Plaintiffs may not seek against states. Plaintiff also cites to *Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980) for the principle that sovereign immunity does not apply when state officials act in bad faith. However, the section of the opinion on which Plaintiff relies concerns qualified immunity rather than sovereign immunity. *See id.* at 652-53.

[3] Again, Plaintiff is mistaken. Although the Fourteenth Amendment provides Congress with the authority to abrogate a state's sovereign immunity, it did not serve as a blanket abrogation of sovereign immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996) (explaining that section five of the Fourteenth Amendment allows Congress to abrogate the immunity from suit provided by the Eleventh Amendment).

8

2015) (a claim brought against a state agency under § 1986 "is not cognizable because the agency is not a 'person' under the statute."). Therefore, the Magistrate Judge's conclusion that all federal claims should be dismissed is correct.

This leaves Plaintiff's state law claims against all Defendants, which went unaddressed by the Magistrate Judge. They too must be dismissed, "because federal courts may not entertain suits against states based on state law." *See Sorrentino v. Godinez*, 777 F.3d 410, 415 (7th Cir. 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

## LEAVE TO AMEND

Rather than dismissing the lawsuit altogether, Plaintiff requests that the Court provide him with leave to amend his Complaint. He, for instance, would like to name judges in their individual capacity, and would also like to name employees of the Cook County Circuit Court and the Secretary of State's office in their individual capacities.

The Seventh Circuit has held that courts are required to grant IFP plaintiffs "leave to amend their complaints at least once when Rule 15(a) would allow amendment in the case of fee-paying litigants." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1025 (7th Cir. 2013). Based upon the allegations in the Complaint, the Court is skeptical that Plaintiff can state any plausible, non-frivolous claims. However, in an abundance of caution, the Court will permit Plaintiff to file an amended complaint with certain caveats.

First, Plaintiff may not sue any Illinois judges. The doctrine of judicial immunity, which has been embraced for centuries, "confers [judges with] complete

9

immunity from suit, not just a mere defense to liability" for any act "performed by the judge in the judge's *judicial capacity.*" *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) (internal quotation marks omitted)(citation omitted). In determining whether a judge's act or omission is entitled to judicial immunity, courts generally consider three factors: "(1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as a judge; (2) whether the act is normally performed by a judge; and (3) the expectations of the parties, *i.e.*, whether the parties dealt with the judge as a judge." *Lowe v. Letsinger*, 772 F.2d 308, 312 (7th Cir. 1985).

In his Complaint, Plaintiff alleges that state court judges acted "not with legal justification nor in the exercise of judicial discretion, but for the extra-judicial purpose of obstructing Plaintiff's pursuit of justice . . ." (Doc. 1 at 2).Yet for each of the acts that Plaintiff alleges were extra-judicial, the judges were acting in their judicial function (rather than a ministerial function) and engaging in an act that is normally performed by a judge, and the parties understood that they were dealing with the judges as judges. *See Lowe*, 772 F.2d at 312. For example, Plaintiff complains that one judge granted state defendants' motion for summary judgment "without comment or reason, and for the most part those rulings clearly contradicted Illinois common law." (Doc. 1 at 11). It does not matter that Plaintiff believes the various judges acted with bad faith or with malice: absolute judicial immunity extends to those acts. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). Here, where Plaintiff believes that the judges acted with improper motivation in ruling on motions and in making other decisions in his case, he has no remedy in a civil rights

10

suit; rather, his remedy was through the appellate process. *See Dawson*, 419 F.3d at 661.

Second, Plaintiff may not bring a claim pursuant to the Illinois Religious Freedom Restoration Act ("IRFRA"). Even if Plaintiff wished to bring a claim pursuant to IRFRA against state employees in their individual capacity, he would need to bring such a claim in the Illinois Court of Claims rather than a federal court. *See Banks v. Dougherty*, No. 07-cv-5654, 2010 WL 747870, at *10-11 (N.D. Ill. Feb. 26, 2010) (concluding that IRFRA claims brought against state employees in their individual capacity are in essence actions against Illinois because the employees' duties under IRFRA only arise because of their employment with the state); *Wilkins v. Walker*, No. 09-CV-0457, 2012 WL 25342, at *3 (S.D. Ill. Jan. 26, 2012) (same).

Third, Plaintiff cannot bring a Tampering with Public Records Claim pursuant to 720 Ill. Comp. Stat. 5/32-8. Tampering with public records is a criminal offense in Illinois that does not provide for a private right of action. Plaintiff does not have standing to bring these criminal allegations against Defendants. *See* 720 Ill. Comp. Stat. 5/32-8 (2013); *see also Johns v. Amtrak Police Unit*, 07 C 530, 2007 WL 1655281, at *5 (N.D. Ill. June 1, 2007).

Fourth, Plaintiff may not bring any claims relating to denial of his Seventh Amendment rights. The crux of Plaintiff's Complaint is that the state court judge improperly dismissed certain of his claims at summary judgment. As discussed above, Plaintiff may not sue the state court judges because they are entitled to absolute judicial immunity. But supposing Plaintiff believed some actor other than

11

the judge deprived him of his Seventh Amendment right to a jury in a civil trial, he would be mistaken. First, the argument that properly-entered summary judgment violates the Seventh Amendment "flies in the face of firmly established law." *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006) (internal quotation marks omitted) (citations omitted). If Plaintiff believed that summary judgment was improper, he had an opportunity to appeal that decision. Second, and more fundamentally, however, the Seventh Amendment is binding on federal courts, but it is not binding on state courts. *See Kremers v. The Coca-Cola Co.*, 714 F. Supp. 2d 912, 916 (S.D. Ill. 2009). Because Plaintiff's complaints relate to a state court disposition, the Seventh Amendment claim is inapplicable. *See id.*

Fifth, the current allegations in the Complaint do not support a due process claim, and based upon the facts pleaded it is clear that any amendment would be futile. The Court understands Plaintiff's due process claim to be based on Defendants' actions that he believes denied him access to a court. When an individual has a claim with a reasonable basis in fact or law, the Fourteenth Amendment entitles him "to a fair opportunity to present his . . .claim." *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). In *Christopher v. Harbury*, the Supreme Court synthesized the case law of various federal circuit courts and concluded that right of access claims take two forms: forward looking claims in which "systemic official action" prevented a Plaintiff from filing a lawsuit and backward-looking access claims in which a plaintiff challenges official action that "caused the loss or inadequate settlement of a meritorious case." 536 U.S. 403, 413-14. Here, where

Plaintiff was able to bring his lawsuit but ultimately obtained a settlement that he considers to be woefully inadequate, he alleges a backward looking claim. *See id.*

When state actors "shield from the public [and the plaintiff]. . . key facts which would form the basis of [a plaintiff's] claim for redress," a plaintiff can bring a backward looking claim. *See Bell*, 746 F.2d at 1261. So for example, in *Bell*, Wisconsin police who fatally shot a man engaged in an elaborate cover-up in order to make it seem like they killed a suspected felon in self-defense when in actuality they shot an unarmed man in the back. 746 F.2d at 1261. When the man's father brought a wrongful death action against the officer, he did so on the basis of these grossly-distorted facts and settled the claim for an amount so paltry that he refused to accept the settlement check. *Id.* at 1223. The Court held that "the cover-up and resistance of the investigating police offers rendered hollow [Bell's father's] right to seek redress. . . " *Id.*

As the Second Circuit has recently explained, however, a backward-looking claim "may not proceed if the plaintiff was, at the time of the earlier lawsuit, aware of the facts giving rise to his claim." *See Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012). "[T]he point of the backward-looking right of access . . . is to ensure that plaintiffs have [an] opportunity [to litigate] – not to convert every instance of deception by a governmental witness into a separate federal lawsuit." *Id.* at 128-29. If a plaintiff is aware of facts giving rise to his claim and has been provided a chance to rebut evidence, he does have adequate access to a judicial remedy, in that he "can attempt to demonstrate the falsity of the official's statement through discovery and argument before the court." *Id.* at 128.

Plaintiff alleges that employees of the Secretary of State created fraudulent evidence that tended to show that an imposter posing as his cab driver was not actually an imposter. However, he was aware of the alleged falsification at the time of his state court lawsuit, and in fact he brought it to the attention of the state court. Because Plaintiff did not later discover evidence that might have impacted his right to recovery, but dealt with the alleged falsification in real-time, he has no backward-looking claim against employees of the Secretary of State's office. *See id.* at 128-29.

Plaintiff also alleges that employees of the Clerk of the Circuit Court of Cook County made it difficult from him to litigate his case by improperly filing documents, refusing to backdate timely-filed documents, and limiting his immediate access to certain files to which he believes he should have had access. This, in essence, sounds like a forward-looking claim: Plaintiff has alleged that employees in the Clerk's office took steps to prevent him from actually filing his lawsuit. However, by his own admission, his case was not impacted by employees' failure to timely file or timestamp his submissions to the court. He was able to pursue it in state court, even though he suffered inconveniences and frustrations along the way. On the basis of these pleaded facts, Plaintiff cannot state a claim on the basis that these defendants denied him access to court, because employees in the Clerk's office did not erect barriers that ultimately kept him from preparing or filing his law suit. *See Christopher*, 536 U.S. at 413.

In an abundance of caution, the Court will provide Plaintiff with the opportunity to replead his religious discrimination and equal protection claims

against employees in the Cook County Clerk of the Circuit Court and Illinois Secretary of State's offices, and the related conspiracy claims pursuant to 42 U.S.C. §§ 1985 and 1986. The Court directs Plaintiff to Federal Rule of Civil Procedure 11(b), which describes the obligations that unrepresented parties must comply with when they file a pleading with the Court.

## MOTION TO APPOINT COUNSEL

Finally, the Court considers Plaintiff's motion for appointment of counsel. (Doc. 4). A civil litigant is not entitled to a court-appointed attorney. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). However, the Court may request an attorney to represent an indigent litigant. 28 U.S.C. § 1915(e)(1). The decision of whether to appoint counsel is generally left to the discretion of the Court. *Wilson v. Duckworth*, 716 F.2d 415, 418 (7th Cir. 1983). The litigant must first show that he made a reasonable attempt to acquire counsel without Court intervention. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If the litigant has made the proper attempt, the Court considers whether, "given the difficulty of the case," he appears able to litigate it himself, and, if not, whether appointed counsel would be "reasonably likely to alter the outcome." *Id.* at 655-56, 660.

In his motion, Plaintiff states that he has attempted to acquire counsel, so he has therefore met the threshold requirement. (*See* Doc. 4). However, Plaintiff's filings with the Court indicate a litigant who is able to proceed on his own. *See Pruitt*, 503 F.3d at 654. His Complaint and his Objection to Magistrate Judge Schanzle-Haskins's Report and Recommendation are well-written and are reflective of a litigant with basic understanding of the applicable law and civil procedure who

is able to both research and advocate for his own interests. Moreover, Plaintiff has experience litigating cases on his own, including the state court tort action that gives rise to this case. Finally, Plaintiff's claims are not extraordinarily complicated; they do not present novel difficulties that somehow set them apart from other claims brought by *pro se* plaintiffs. On the basis of the current record and in light of the nature of his claims, the Court concludes that Plaintiff is competent to proceed *pro se* and therefore declines to appoint counsel.

## Conclusion

IT IS THEREFORE ORDERED that the Court ADOPTS the disposition of Magistrate Judge Schanzle-Haskins's Report and Recommendation. (Doc. 5), and DENIES Plaintiff's Motion to Request Counsel (Doc. 4). On merit review pursuant to 28 U.S.C. § 1915(e)(2), Plaintiff's Complaint is DISMISSED. Subject to the restrictions explained in this Opinion, Plaintiff MAY file an Amended Complaint that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure within twenty-one days. If Plaintiff fails to do so, his case will be dismissed with prejudice. Should Plaintiff file an amended complaint that properly states a claim, the Court will then consider whether he can proceed in forma pauperis.

Entered this 2nd day of June, 2015.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
